JAMES F. GENTRY V. STATE

No. 27,478. March 23, 1955
Motion for Rehearing Denied
(Without Written Opinion) May 18, 1955

*M. D. Emerson,* Paris, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for transporting beer and whiskey in a dry area; the punishment, enhanced because of a prior conviction for an offense of like character, eighteen months in jail and a fine of $1,000.

Appellant, not having testified or offered evidence in his behalf, challenges the sufficiency of the evidence to sustain the conviction.

The dry status of the area was admitted and appellant was shown to have been previously convicted of possessing whiskey in a dry area for the purpose of sale.

The evidence shows that on January 11, 1954, appellant was permitted to take a Light Green 1951 Chevrolet Tudor Styleline Deluxe car, which he was negotiating to purchase, from the Rocket Motor Company for demonstration purposes. This car was identified by one of its owners as being involved in a collision the following morning.

Jerrold Daniel, a 21-year-old grocery clerk, testified that he was acquainted with appellant and identified him as one of the two occupants of a 1951 Green Chevrolet which was involved in an accident at the intersection of 40th Street and Avenue P, in Lubbock, shortly after 7:20 a.m., which was before daylight, on January 12, 1954.

Daniel testified that the car overtook and passed him on Avenue P, some 4 blocks from the scene of the collision; that he did not witness the accident, probably because of the flying dust and the darkness, but stopped when he came to the wreck; that he saw appellant at the steering wheel on the driver's side of the 1951 Green Chevrolet. The front end of the car was mashed and appellant and his unidentified companion on his right were against the windshield and were unable to get out until the witness and others opened the door for them.

Daniel further testified that the automobile in which the defendant was seated had an odor of alcohol around it, and over objection said that several cases of beer were stacked in the car between the front and back seat. Also he testified that he heard appellant say "does anybody have a car that they can put this stuff in?"

The other car involved in the collision was described by Daniel as a 1940 Chevrolet.

Officers arrived at the scene of the accident while Daniel was there. City Police Officers Love, Davis, Miller and Lieutenant Burdett went to the scene in response to the report that a wreck had occurred. Officer Love testified that he directed traffic near the scene, and was then dispatched to "follow a car that was loaded with liquor to the Rainbow Garage, to be turned over to the Liquor Board"; and he followed it "right on the bumper on to the Rainbow Garage."

Asked to describe the car he was directed to follow, Love testified "It was a '51 Chevrolet Power Glide, *tan*, license number was BA 5399. I don't remember whether a four door or tudor."

Appellant relies strongly upon the word "tan" in this testimony, pointing out that the car which appellant borrowed and in which he was seated under the steering wheel was green in color.

Love identified the car as being a '51 Chevrolet, and further testified that he observed in the car "a large quantity of beer and whiskey" * * * * "quite a few bottles had been broken and we followed it to the Rainbow Garage and Officer Truly of the Liquor Board took possession of it and salvaged what he could."

Officer Miller conversed with appellant at the scene of the accident and appellant told him that he was driving the '51 Chevrolet involved in the collision. He further testified that he observed in the car which appellant said he was driving, "a quantity of alcoholic beverage," and that he directed Officer Love to take charge of the car until it was properly turned over to the Texas Liquor Control Board, and he knew that Love did then take charge of it there at the scene.

John Truly, of The Texas Liquor Control Board assigned to the Lubbock District, testified that Officer Love turned over

to him, and he took from a wrecked '51 Chevrolet at the Rainbow Garage, 168 twelve ounce cans of Budweiser Beer, 168 twelve ounce cans of Mitchell's Beer, 4 four-fifth quarts of Old Charter Whiskey, 2 four-fifth quarts of Bourbon DeLuxe Whiskey, and 1 four-fifth quart of Seagram Seven Crown Whiskey and a number of broken bottles. The beer and whiskey were offered in evidence.

Appellant strenuously objected to the introduction of the beer in evidence, and reserved a bill each time a witness (and on one occasion the judge) referred to the contents of the car, the cases or the cans as beer.

It being shown beyond question that the car contained several quarts of whiskey, it does not appear to be controlling whether the contents of the cases and cans were beer or not. However, the evidence shows that the cans were labeled as a well known lawfully manufactured brand of beer, the cases were sealed and similarly labeled, and the witness, having testified to his ability to so determine the question, opened a can, smelled the contents and testified that it was beer.

The trial court's prompt withdrawal of his reference to the exhibit as beer, and the evidence mentioned, removed any question as to his remark calling for reversal.

We find the evidence sufficient to show that the car from which the beer and whiskey was taken by Inspector Truly was the same car which was driven and occupied by appellant at the time of the collision, and find the evidence sufficient to sustain the conviction for transporting such beer and whiskey in a dry area.

The remaining bill which requires discussion relates to argument of the attorney for the state. The argument complained of in the bill was:

"Now, these witnesses we have brought before you today, we've had officers, we've had a Tech student, a boy that is a grocery clerk out here — I think some of them probably sitting in the audience now — and gentlemen, they are interested in this case and I'm interested in this case, there's a lot of people interested in this case besides James Gentry, and you don't have to assume that."

The objection was that the remarks constituted unsworn

testimony and were inflammatory and prejudicial, and the trial court was requested to instruct the jury not to consider the remarks for any purpose, but the objection was overruled and the request denied.

The bill certifies that no witness had testified that he had an interest in the case; that the court had no recollection of whether or not the remarks were invited by any argument of defense counsel, and the punishment assessed by the jury was stated.

Appellant would have us construe the remarks as having led the jury to understand that the people referred to as well as "lots of people" had expressed their interest in the case to the county attorney, and therefore constituted unsworn testimony that was inadmissible because it was hearsay and further would have been inadmissible if the hearsay feature was not present.

We are unable to agree with such construction, and call attention to the fact that the complained of remarks do not show whether the interest of the parties referred to was favorable or unfavorable to appellant. Further, the remarks cannot be construed to indicate that the people referred to were asking the jury to convict appellant or assess a heavy penalty against him.

We find no reversible error in the bill mentioned or in the remaining complaints raised by appellant.

The judgment is affirmed.